**BRENDAN MCCARTHY**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone:     (406) 657-6101
FAX:        (406) 657-6989
Email:      brendan.mccarthy@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**CHARLES BERNARD PARKE,**<br><br>Defendant. | CR 08-24-BU-CCL<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE** |

Defendant Charles Bernard Parke has filed a second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Parke is currently serving a 262-month sentence for possession of methamphetamine with intent to distribute. Defendant's motion should be denied because: (1) he has not provided "extraordinary and compelling" reasons justifying release; (2) he remains a danger

1

to the community; and (3) his release would not be justified under the 18 U.S.C. § 3553(a) factors.

## INTRODUCTION

### I. Bureau of Prisons' Vaccination Plan

At the outset, it should be noted that the Bureau of Prisons (BOP) has already begun administering vaccines to inmates. The BOP's vaccination plan is available here: https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf.

Additionally, the BOP webpage displays the total number of vaccine doses distributed and administered to inmates across the country. See, https://www.bop.gov/coronavirus/. The website includes statistics on the number of "full staff inoculations completed[1]" and "full inmate inoculations completed" for each facility that has received allocations of the vaccine. *Id*. The website indicates that 132 inmates and 130 staff members at FCI Terminal Island have been fully inoculated to date. https://www.bop.gov/coronavirus/, (last visited March 15, 2021). As more shipments are received, BOP will continue to offer the vaccine to additional facilities and to additional staff members and inmates at those facilities. *Id*.

---

[1] 'Fully inoculated' means the inmate or staff member has received both doses of the vaccine.

Since BOP has started distributing vaccines to inmates, district courts have now begun denying relief to inmates who have received either the first dose of the vaccine or who have been fully vaccinated. See, *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (relief denied where defendant's full vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)) and *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (relief denied in light of administration of first dose of the Pfizer vaccine).

Accordingly, the United States asserts that should the defendant be fully vaccinated while this motion is pending, then he will no longer be able to establish an "extraordinary and compelling" reason for release based on concern about COVID-19 infection.

## II. Defendant's Offense and Sentence

On October 23, 2008, the defendant was found by Butte Silver Bow Law Enforcement to be in possession of 347.8 grams of methamphetamine. PSR ¶14. Following his arrest, police interviewed five witnesses who said they had received methamphetamine from the defendant during the preceding days and weeks. PSR ¶15.

The PSR prepared prior to sentencing showed that the defendant has an extensive criminal history. At age 18, he was convicted of felony burglary in Butte

in 1988. PSR ¶32. He was then convicted of two felony counts of criminal sale of dangerous drugs in Butte in 1989 and sentenced to Montana State Prison for five years with two years suspended. PSR ¶33. In 1994, he was convicted of possession of a controlled substance with intent to deliver (methamphetamine) in Coeur D'Alene, Idaho and was sentenced to at least two years in prison. PSR ¶34. Next, in 2003, he was convicted of two counts of criminal possession of dangerous drugs with intent to deliver and was sentenced to Montana State Prison for ten years with five years suspended. PSR ¶35.

Based on his criminal convictions, his criminal history category in the PSR was initially IV. PSR ¶38. However, since he had two prior convictions for controlled substances offenses, he qualified as a career criminal under USSG § 4B1.1 and his criminal history category became a level VI. PSR ¶38,39. With a total offense level of 34 and criminal history category of VI, the defendant's guidelines range was 262 to 327 months. PSR ¶75.

In October 2009, the Court sentenced the defendant to 262 months, which was at the low-end of the guidelines range.

In April 2020, the defendant filed his first motion for compassionate release. Doc. 132. The Court denied the motion because the defendant failed to exhaust his administrative remedies. Doc. 136 at 6.

### III. Defendant's Medical Records

4

The United States has obtained defendant's medical records from the Bureau of Prisons. Exhibits 1 and 2. According to the records, the defendant's medical history includes a heart valve transplant and he has been diagnosed with hypertension, gastro-esophageal reflux disease, and gout. Ex. 2 at 7. The defendant has been prescribed warfarin, but the records show that he has been non-compliant with taking it. Ex. 1 at 19-20, 26. The records also state that the defendant's hypertension is "under control but at times [he] does not take medication and sometimes eats too much salt from commissary and friends." Ex. 1 at 55.

IV. **Defendant's Motion for Compassionate Release**

In his motion, the defendant provided proof that he filed a request for release with the warden at his facility, and the warden denied his request on August 12, 2020. Doc. 137.1. The warden found that the defendant could independently carry on activities of daily living and provide self-care. *Id*.

As to the substantive issues, the defendant argues that he should be released early from his sentence because he is 53 years-old and has the following medical conditions: two prior open-heart surgeries, mechanical valve replacement, lung and immune deficiency, prediabetic, deteriorating discs in back, gout, obesity, and previously broke his ankles and left knee while fighting forest fires years ago. Doc. 137 at 2. A week after filing his motion, the defendant also filed a

5

supplement where he requested that the Court appoint an attorney to represent him. Doc. 138.

## V.     Incarceration and Projected Release Date

Defendant is currently located at FCI Terminal Island in California. *See* BOP Inmate Finder, https://www.bop.gov/inmateloc/ (last visited March 12, 2021). His projected release date, according to the BOP website, is August 16, 2027. *Id.*

Additionally, the BOP website indicates that there are currently zero inmates and five staff members at FCI Terminal Island who have tested positive for COVID-19 and 510 inmates or 42 staff members who have recovered. *See* https://www.bop.gov/coronavirus/index.jsp (last visited March 12, 2021).

## VI.    Bureau of Prisons' Response to COVID-19

BOP has taken aggressive steps to protect inmates' health and to keep COVID-19 outside of its facilities. "[M]aintaining safety and security of BOP institutions is [the BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (March 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp. Indeed, the BOP has longstanding procedures for managing the threat of infectious disease— including protocols relevant to a variety of potential infections. *See, e.g.*, BOP Program Statement No. 6190.04, Infectious Disease Management (June 3, 2014), available at https://www.bop.gov/policy/progstat/6190_004.pdf. Tellingly, the

BOP has had a detailed "Pandemic Influenza Plan" in place since 2012. *See* BOP Health Services Division, Pandemic Influenza Plan (October 2012), *available at* https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.

The BOP began planning for COVID-19 in January 2020, when it began developing policies in consultation with the Centers for Disease Control. *See* BOP, COVID-19 Action Plan: Agency-Wide Modified Operations (March 13, 2020) ("BOP Action Plan"), *available at* https://www.bop.gov/resources/news/20200313_covid-19.jsp; *see generally* BOP, COVID-19 Coronavirus (updated regularly), *available at* https://www.bop.gov/coronavirus/index.jsp. Subsequently, in mid-March, the BOP implemented an action plan to "mitigate the spread of COVID-19" in prisons for the protection of both inmates and staff. *See* BOP Action Plan, *supra*. In addition, BOP facilities have medical care available to all inmates.

### VI.   Administrative Options Available to Inmates

Inmates with COVID-19-based concerns have a variety of administrative options they can pursue through the BOP itself. Although not reviewable by courts, these options include far more flexible remedies than permanent reduction of a sentence under 18 U.S.C. § 3582(c)(2). *See generally* 18 U.S.C. § 3621(b) (precluding judicial review of BOP placement decisions); *Reeb v. Thomas*, 636

F.3d 1224, 1226-28 (9th Cir. 2011) (courts lack jurisdiction to review BOP's placement decisions under 18 U.S.C. §§ 3621-24).

First, the BOP can place eligible inmates in home confinement. *See generally* 18 U.S.C. § 3624(c)(2). The recently enacted CARES Act, which Congress passed to address the COVID-19 crisis, will substantially increase BOP's statutory authority to do so. *See* Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (March 27, 2020) (allowing BOP to "lengthen the maximum amount of time the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2)). The Attorney General has ordered the BOP to exercise its home-confinement authority broadly to protect "the people in [their] custody," taking into consideration prisoners' age, vulnerability to COVID-19, and other factors. *See* Attorney General, Memorandum for Director of Bureau of Prisons Re: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020), *available at* https://www.justice.gov/file/1262731/download.

Second, BOP has authority to grant an inmate a temporary furlough from custody under 18 U.S.C. § 3622, for "obtaining medical treatment not otherwise available" or "any other significant activity consistent with the public interest." *See* BOP Program Statement No. 5280.09, Inmate Furloughs (January 20, 2011),

*available at* https://www.bop.gov/policy/progstat/5280_009.pdf.  Certain COVID-19-related conditions would potentially satisfy the BOP's requirements for such a furlough.

Third, under 18 U.S.C. § 3582(c)(1)(A)—which, unlike BOP's placement decisions, allows for judicial review—the BOP has initial authority to assess inmates' applications for compassionate release.  The BOP has detailed regulations setting forth relevant procedures and considerations.  *See* BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (January 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

## ARGUMENT

The compassionate release statute, 18 U.S.C. § 3582(c), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

To begin with, the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is a non-jurisidictional, mandatory claim processing rule that must be enforced when invoked by the government. See, *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020).

Further, the applicable policy statement appears at U.S.S.G. §1B1.13 and it provides that the district court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)   Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    Family Circumstances.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)    Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with note 1(D), BOP promulgated Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019, to set forth its evaluation criteria.

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin,* 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

## I. Exhaustion of administrative remedies.

The United States acknowledges that the defendant did exhaust his administrative remedies prior to filing his motion for compassionate release. As stated, his request for compassionate release was denied by the warden at his facility on August 12, 2021. Doc. 137.1.

## II. Reduction of defendant's sentence is not warranted.

### A. Defendant's medical conditions do not qualify as an "extraordinary or compelling" reason under the statute.

The CDC has identified two categories of medical risk factors affecting the likelihood of severe outcomes from COVID-19. See, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC website lists one category of medical

12

conditions where individuals *are* at an increased risk of severe illness due to COVID-19 and another category of medical conditions where individuals *might* be at an increased risk of illness due to COVID-19. *Id*. However, as to the second category, the CDC website cautions that COVID-19 is a new disease and currently there is limited information about the impact of many underlying medical conditions on the risk for severe illness from COVID-19. *Id.*

Here, the only medical condition listed by the defendant that would fit within either of the two categories is hypertension.² The other conditions that he lists – such as two prior open-heart surgeries, mechanical valve replacement, lung and immune deficiency, prediabetes, deteriorating discs in back, gout, and previously broken ankles and knee – do not fall under either of the CDC risk factor categories. The defendant also states that he is suffering from obesity, but there is not any indication in the medical records that he has a body mass index above 30 kg. Further, hypertension is only listed in the second category of risk factors under the CDC guidelines, which applies to conditions that *might* create a higher risk of severe illness. Accordingly, since the defendant's medical condition(s) only fall

---

² The CDC guidelines do list solid organ transplant in the first categories of conditions that will cause severe illness due to COVID-19. The defendant states in his motion that he has previously had open-heart surgeries, but that would not appear to qualify as a solid organ transplant.

13

within the second category, the United States asserts that he cannot meet the "extraordinary and compelling" standard for release.

Courts have also denied relief where hypertension is the only medical condition that falls under the CDC risk factors. See, *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (the court did not abuse its discretion in denying relief because the CDC did not classify hypertension as a risk factor); *United States v. Barrett*, 2021 WL 225799 (7th Cir. Jan. 22, 2021) (the district court did not abuse its discretion in concluding that hypertension and MS were not conditions placing the defendant at risk); and *United States v. Harris*, 2021 WL 745262, at *3 (11th Cir. Feb. 26, 2021) (the district court did not abuse its discretion in denying relief where the defendant presented hypertension, which is classified by the CDC as only possibly presenting a risk). Similarly, this Court should also deny the defendant's motion where hypertension is the only medical condition that would fall under the CDC risk factors.

      **B.**     **Defendant remains a danger to the community.**

This Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13. Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4)

the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See*, 18 U.S.C. § 3142(g).

This record precludes such a finding. To the contrary, defendant poses a very real danger to the community. Here, the defendant has been involved with the criminal justice system since age 18. He has had felony criminal convictions for burglary and multiple controlled substances offenses. Due to having at least two prior controlled substance offenses, the defendant also qualified as a career criminal under USSG § 4B1.1. Because he was a career criminal, the defendant's criminal history category was revised upward to a level VI – the highest criminal history category under the guidelines. The defendant's two prior controlled substances convictions from 1994 and 2003 also both still qualify as a "controlled substance offense" under USSG § 4B1.2[3] because the defendant was sentenced to more than one year for each offense and each offense involved the distribution of a controlled substance.

According to BOP records, the defendant also has had a number of disciplinary infractions while in custody. In 2016, he admitted to a violation related to stealing items from the dining hall. Ex. 3. In 2018, the defendant was

---

[3] USSG § 4B1.2 defines what qualifies as a "controlled substance offense" under USSG § 4B1.1.

found to have possessed stolen property. *Id*. And, in 2019, the defendant admitted to the charge of threatening bodily harm. *Id*.

The defendant's prior drug-related criminal history together with his continued disciplinary infractions while in custody show that he is not someone who conforms his behavior to the rules, and, therefore, he would likely continue to pose a danger to the community if he were to be released from prison early. A such, his motion should be denied on dangerousness grounds.

### C. The 18 U.S.C. § 3553(a) factors do not support early release.

Any compassionate release decision—even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). As such, any consideration of release now should be balanced against the same 3553(a) factors – such as deterrence, just punishment, respect for the law, and avoidance of disparity of sentencings – that were considered at sentencing.

Those factors do not support the defendant's request for premature, permanent release. In October 2009, the defendant received a low-end guideline sentence of 262 months. To date, the defendant has served 137 months of that sentence, which is approximately 52 percent. And, according to the BOP website, the defendant is not scheduled for release until August 16, 2027. Therefore, the defendant has a substantial amount of time remaining on his sentence. Early

16

release from prison now would undermine the factors considered at his original sentencing such as just punishment, need for deterrence, and need to promote a respect for the law.

As such, the United States submits that a consideration of the 18 U.S.C. § 3553(a) factors shows that the defendant cannot meet the high burden for compassionate release.

### III. Defendant is not entitled to appointment of counsel.

The defendant filed a supplement to his motion for compassionate release on March 9th. In the supplement, the defendant requested the appointment of counsel to assist with his request. Doc. 138. Courts, however, have consistently held that the constitutional right to counsel does not extend to motions for post-conviction relief, including motions under 18 U.S.C. § 3582. *United States v. Ryerson*, 2020 WL 3259530, at *2 (E.D. Tenn. June 16, 2020) (collecting cases). Moreover, the defendant has not shown any extraordinary reason as to why he would need assistance with this motion or how the absence of counsel impedes his ability to set forth his claims for compassionate release in any way. As such, his request for assistance of counsel should be denied.

## CONCLUSION

Based on the aforementioned reasons, the United States respectfully requests that the defendant's motion for compassionate release be denied.

DATED this 17th day of March, 2021.

                                       LEIF M. JOHNSON
                                       Acting United States Attorney

                                       */s/ Brendan McCarthy*
                                       Assistant U.S. Attorney

## **CERTIFICATE OF COMPLIANCE**

Pursuant to D. Mont. LR 7.1(d)(2) and CR 12.1(e), the United States' response to Defendant's motion for release is proportionately spaced, has a typeface of 14 points or more, and has a body containing 3,544 words.

*/s/ Brendan McCarthy*
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2021, a copy of the foregoing document was served on the following persons by the following means:

- (1) CM/ECF
- ( ) Hand Delivery
- (2) U.S. Mail
- ( ) Overnight Delivery Service
- ( ) Fax
- ( ) E-Mail

1. Clerk, U.S. District Court

2. Charles Bernard Parke, #10211-046
   FCI Terminal Island
   P.O. Box 3007
   San Pedro, CA 90733

/s/ Brendan McCarthy
Assistant U.S. Attorney